IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KATHLEEN A. PENLEY,

          Plaintiff,

vs.                                       **No. CIV 99-18 LH/LCS**

LARRY G. MASSANARI,[1] ,
**Acting Commissioner,**
**Social Security Administration,**

          Defendant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

THIS MATTER came before the Court upon Plaintiff's Motion to Reverse or Remand the

Administrative Decision (*Doc. 7*), filed September 21, 1999.  The Commissioner of Social Security

issued a final decision denying the Plaintiff her claim for a period of disability and disability insurance

benefits.  The United States Magistrate Judge, having considered the Motion, the memoranda

submitted by the parties, the administrative record and the applicable law, finds that the motion is well

taken and recommends that it be GRANTED.

**PROPOSED FINDINGS**

**I. PROCEDURAL RECORD**

    1.       Plaintiff Kathleen Penley filed an application for a period of disability and disability

---

[1]       Effective March 29, 2001, Larry G. Massanari was appointed to serve as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25 (d), Larry G. Massanari, Acting Commissioner of Social Security, is substituted for William A. Halter, Acting Commissioner of Social Security, as the defendant in this action.

insurance benefits with the Social Security Administration on June 1, 1994 alleging a disability since

November 16, 1993 due to depression, post-traumatic stress disorder, fatigue, anxiety, a seizure

disorder, back injury, amputation of two fingers, asthma, and residual effects of corneal transplants.

*See* R. at 128 and 131. Plaintiff's application was denied at the initial level on August 24, 1994, *see*

R. at 72, and at the reconsideration level on February 2, 1995. *See* R. at 86. Plaintiff appealed the

denial of her claim by filing a Request for Hearing by Administrative Law Judge (ALJ) on February

16, 1995. *See* R. at 14.

2.      The Commissioner's ALJ conducted a hearing on Penley's application on July 27,

1994. *See* R. at 19. The ALJ made the following conclusions according to the sequential analysis set

forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.

1993): the claimant had not engaged in substantial gainful activity since October 8, 1993; the severity

of the claimant's impairments did not meet or equal a listed impairment; the claimant had a "severe"

impairment or combination of impairments due to a back injury, amputation of her right index and

long fingers, "marked"[2] obesity, mild impingement of the right shoulder, depression, and side effects

from medication which interfere with her ability to work; the claimant's subjective complaints and

functional limitations, including pain were not supported by the evidence as a whole in the disabling

degree alleged and therefore lacked credibility; and the claimant had a residual functional capacity for

at least light work. *See* R. at 19-22. Because of these findings, the ALJ finally concluded that Ms.

---

[2]      A "marked" impairment represents a degree of disability that satisfies two of the four listing requirements. The Tenth Circuit has stated that "the mental assessment forms evaluate the claimant's abilities as 'unlimited/very good,' 'good,' 'fair,' and 'poor or none.' Moreover, the forms' definition of 'fair' is misleading. Though describing a functional ability as 'fair' would imply no disabling impairment, 'fair' is defined to mean: 'Ability to function in this area is seriously limited but not precluded. We conclude that 'seriously limited but not precluded' is essentially the same as the listing requirements' definition of the term 'marked.'" *Cruse v. United States Department of Health & Human Services,* 49 F.3d 614, 618 (10th Cir. 1995) (citations omitted). A "slight" impairment has not been defined.

Penley was not disabled and that she had retained the residual functional capacity to perform the mental and physical requirements of her past work as a customer service representative. *See* R. at 21. Plaintiff objects to these findings, particularly, to the ALJ's analysis under the Listings and his assessment that she could perform her past relevant work.

3.       The ALJ entered his decision May 23, 1996. *See* R. at 19-25. Thereafter, the Plaintiff filed a request for review in June of 1996 to the Appeals Council. *See* R. at 14. On December 15, 1998, the Appeals Council issued its decision denying request for review and upholding the final decision of the ALJ. *See* R. at 7. The Plaintiff subsequently filed her complaint for court review of the ALJ's decision on January 7, 1999. (*Doc. 1*).

## II. STANDARD OF REVIEW

4.       The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence on the record overwhelms the evidence supporting the decision. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

5.       In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson*, 987 F.2d at 1486. The regulations of the Social Security

3

Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing

disability applications. *See* 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at

any step, the Commissioner finds the claimant is not disabled.  *See Thompson*, 987 F.2d at 1487.

6.      At the first four levels of the sequential evaluation process, the claimant must show

she is not engaged in substantial gainful employment, she has an impairment or combination of

impairments severe enough to limit her ability to do basic work activities, and her impairment meets

or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R.

Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R.

§§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the

Commissioner to show the claimant is able to perform other substantial gainful activity considering

her residual functional capacity, age, education, and prior work experience. *See id.*

### III. ADMINISTRATIVE RECORD

7.      The record indicates that in 1993, Ms. Penley was injured in a motor vehicle

accident. *See* R. at 128-31. The medical evidence reveals that she suffered a mild concussion and

a crush injury to her dominant right hand resulting in the amputation of the first two fingers. *Id.*

She was discharged after two days of postoperative monitoring and intravenous antibiotics. *See*

R. at 128. Plaintiff is currently fifty-seven years of age. *See* R. at 67.

8.      Before the accident, Ms. Penley testified that she was hospitalized for period of

eight weeks for depression and suicidal ideation. *See* R. at 52 and 396. The record indicates that

she has a history of medical impairments including the loss of her two fingers, her obesity, and her

depression. In January of 1994, Ms. Penley was seen by Mark L. Berger, M.D. for a

neurological evaluation. *See* R. at 235. Dr. Berger's impressions included that "the dizziness and

memory disturbance following the claimant's motor vehicle accident were most likely attributable to post concussion or post traumatic stress disorder." *Id*.  Three months later, Stephen J. Chiullo, Ph.D., a clinical neuropsychologist, evaluated Ms. Penley and made the following impressions and recommendations. *See* R. at 253. He stated that "[t]he results of neuropsychological evaluation demonstrate some problems with attention, and performance is poor on tasks of divided attention, alternating attention and is variable on tasks such as digit span. In spite of this, she performs very well on a number of memory tasks, and specifically shows good preservation of recall upon delay." *Id*. The doctor also confirmed that he was unable to identify any "confidence cognitive impairments that could be attributed to head injury." *Id*. However, he specified that her needed medication could have effects on her alertness and attention. *Id*.

9.       On two different occasions during a period of thirty days, Ms. Penley was noted to have depressive and anxious tendencies. *See* R. at 317 and 377. On May 24, 1994, Stephen C. Drukker, M.D. diagnosed Ms. Penley with multiple tendonitis frustrated by the patient's anxiety and depression. *Id*. The doctor urged the claimant to see her psychiatrist or psychologist and make sure they were aware of these physical problems. *Id*. On May 31, 1994, Donald E. Pichler, M.D. also assessed the claimant as having anxiety and depressive tendencies. *See* R. at 317.

10.       Dr. Drukker completed a functional capacity evaluation of Ms. Penley's functional limitations in August of 1994. *See* R. at 370-75. He summarized her physical functional limitations as sedentary: "lifting 0 to 10 pounds occasionally, and a negligible amount frequently and constantly." *See* R. at 374. The doctor's impression was that "Kathy is functional and able to continue working based on her physical capabilities," however "it does appear Kathy is having to

cope with stressors in her personal life, and it would not be unreasonable to suspect that it carries over into the work place." *Id.* Dr. Drukker specified in a letter to U.S. West Health Services[3] that Ms. Penley "will be able to perform the occupation which she had previously." *See* R. at 435. He also recommended "she be expected to type at 75% of the rate which others are expected to type at, and her workload expectation should be reduced by an appropriate amount to compensate for that." *Id.*

11.     In November of 1994, Dr. John P. Owen stated, in a letter to the New Mexico Department of Labor, Employment Security Claims Department, that Ms. Penley had been in psychological treatment beginning in November of 1993 and that she was initially diagnosed with major depression. *See* R. at 396. He also stated that the claimant's post-traumatic stress disorder and eating disorder contributed to her being overweight. *Id.* The doctor's final assessment confirmed that Ms. Penley's "condition is attributable to several factors which occurred in childhood and adulthood. She is unable to deal effectively with the stress associated with her present job. She is attempting to develop the skills to cope with remote and recent trauma and stress. Her treatment plan included psychotherapy and group therapy weekly. In addition, she takes medication for her condition under the direction of a psychiatrist." *Id.*

12.     The following summary represents questions that were asked by the ALJ at Ms. Penley's hearing on July 27, 1995. The Plaintiff testified that she could see with her glasses although she had had four corneal transplants. *See* R. at 35. She also stated that she weighs 306 pounds but that she gained most of her weight after her accident in November of 1993. *See* R. at

---

[3]     Ms. Penley was employed by U.S. West Health Services from 1980 to 1994. There are multiple letters in the record informing U.S. West of Ms. Penley's physical capabilities.

38. Ms. Penley stated she drives herself to the grocery store, to doctors' appointments and

that she drove herself to Colorado for vacation. *See* R. at 41. Her daily activities are minimal

including some cooking, cleaning dishes, and sweeping the floor, but that someone else does most

of her housework. *See* R. at 44-46. With respect to her physical abilities, Ms. Penley stated that

she cannot sit for long periods of time, she can stand for no longer than five minutes, and she can

only walk approximately 100 yards. *See* R. at 39, 49-50. She also stated that she can she can lift

approximately five pounds in her left hand and only twenty pounds in both hands due to the

amputation of two fingers on her right hand. *See* R. at 50. The ALJ did not ask any questions

pertaining to her mental impairments. When her attorney questioned Ms. Penley about her social

activity, she stated that she refrains from social activity because of her depression and

post-traumatic stress disorder. *See* R. at 61. She also stated she has problems with concentration

and memory loss when reading. *Id.*

### III. DISCUSSION

13.      Plaintiff essentially raises three arguments in support of her Motion to Reverse or

Remand the Administrative Agency Decision. First, the Plaintiff argues the ALJ's analysis under the

listings is incorrect. Second, the ALJ failed to consider all of the claimant's severe impairments. And

lastly, the ALJ's finding that the claimant could perform past relevant work is contrary to the

evidence.

#### The Listings

14.      Plaintiff contends that the ALJ's analysis under the listings is flawed.  Specifically,

Plaintiff asserts that the ALJ did not properly analyze the claimant's conditions under the listings for

Soft Tissue Injuries of an Upper or Lower Extremity, for Obesity, and for Affective Disorders. *See*

Pl. Brief at 9-11.

### Soft Tissue Injuries of an Upper or Lower Extremity

15.     Ms. Penley asserts that her hand condition and the fact that she had two fingers amputated during two surgeries within a twelve month period fits within listing § 1.13 (20 C. F. R., Pt. 404, Subpt. P, App. 1, § 1.13), "Soft tissue injuries of an upper or lower extremity." This listing requires that the injury must have involved "a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset." 20 C. F. R., Pt. 404, Subpt. P, App. 1, § 1.13. The ALJ found that Ms. Penley did not meet listing § 1.13 because she did not have any of the surgical procedures contemplated by this listing. *See* R. at 20.

16.     The claimant argues that she underwent two surgeries within a twelve-month period, one in November of 1993 and the other in September of 1994. She further explains that she meets Listing § 1.13 because the surgeries involved amputation and that full function of her hand was never restored.

17.     The ALJ was correct in his finding that listing § 1.13 does not apply to Ms. Penley's condition. Although it can be argued she did sustain a severe injury to the soft tissue in an upper extremity, listing § 1.13 requires a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity. 20 C. F. R. Pt. 404, Subpt. P, App. 1, § 1.13. This section has been interpreted to cover those situations where restoration of function will require repeated staged surgical procedures over a lengthy period, thus making an individual who would otherwise be capable of substantial gainful employment unavailable for work

8

because of these repeated surgical procedures. This interpretation is supported by the phrases "staged surgical procedures for salvage and/or restoration." *See Waite v. Bowen*, 819 F. 2d 1356, 1359 (7th Cir. 1987).

18.     The claimant has never indicated she was unavailable to work during this twelve-month period. Under listing §1.13 a claimant is deemed disabled because she is unavailable for employment due to the surgical procedures. *See Lapinsky v. Secretary of Health & Human Servs.*, 857 F. 2d 1071, 1073 (6th Cir. 1988). The listing addresses only those situations in which the surgical procedures themselves contribute to the claimant's inability to work. *See Knepp v. Apfel*, 204 F.3d 78 (3d Cir. 2000). The focus of listing § 1.13 is the disabling effect of the surgical procedures, not the pain and loss of function from the injury itself. *See ONeill v. Shalala*, 32 F. 3d 571 (Table, text in Westlaw), No. 93-3291, 1994 WL 421762, at *1 (8th Cir. Aug. 15, 1994). The listing is also intended to allow a period of recovery for only those surgical restorations of impaired limbs. *See Knepp*, 204 F.3d at 86. Since the claimant was at all times available to work during the time of the procedures and her procedures concentrated on the removal of her fingers not a limb, the ALJ was correct in finding that she did not meet listing § 1.13.

## Obesity

19.     The Plaintiff also asserts that the ALJ's analysis under listing § 9.09 for Obesity is also flawed. The ALJ stated that the claimant's weight approached the listed levels, but that she did not have any of the additional required conditions. *See* R. at 20. The Plaintiff claims that she does meet the listings requirement due to her pain in a weight-bearing joint and a documented history of respiratory problems. First, the obesity listing § 9.09A requires a claimant to meet certain weight and height standards. Assuming the claimant meets the weight requirement for obesity according

to her height, she must then meet one of the additional five requirements.

20.     Section 9.09A requires "a history of pain and limitation of motion of any weight-bearing joint . . . associated with the findings on medically acceptable imagining techniques of arthritis in the affected joint." 20 C.F.R. § 404, Subpt P, App. 1, § 9.09(A). Although the claimant has pointed to various medical reports related to specific incidents disturbing her right ankle, shoulders and arm, *see* R. at 322, 350, 490-491, there is no evidence revealing a history of arthritis.

21.     In addition, the claimant argues that her history of respiratory problems satisfies the additional requirement necessary for the listing. Listing § 9.09B requires that the claimant have "a respiratory disease with total forced vital capacity equal to or less than 2.0L. or a level of hypoxemia at rest equal to or less than the values specified." 20 C.F.R. § 404, Subpt P, App. 1, § 9.09(B). There is no evidence in the record diagnosing the claimant with symptoms reaching these levels. Therefore, since the claimant failed to produce the necessary evidence to meet the requirements of listing §9.09, the ALJ's assessment was correct.

Affective Disorders

22.     The Plaintiff's final argument under the listings is that the ALJ did not use the appropriate listing, §12.04 for Affective Disorders, when he evaluated her psychological conditions.

23.     When there is evidence of mental impairment that allegedly prevents a claimant from working, the ALJ must follow the procedure for evaluating mental impairment set forth in the applicable regulation and listing of impairments and document the procedure accordingly. *See* 20 C. F. R. § 404.1520a; *see also* 20 C.F.R. § 404, Subpt P, App. 1, § 12.04; *see also Cruse v. U. S. Dept of Health & Hum. Serv.*, 49 F.3d 614, 616 (10th 1995). This procedure first requires the ALJ to determine the presence or absence of certain medical findings pertaining to the claimant's ability to

10

work, sometimes referred to as "Part A" criteria. *See* 20 C.F.R. § 404, Subpt P, App. 1, § 12.04A.

The ALJ must then evaluate the degree of functional loss resulting from the impairment, using "Part

B" criteria. 20 C.F.R. § 404, Subpt P, App. 1, § 12.04B. To record his conclusions, the ALJ then

prepares a standard document called a psychiatric review technique form (PRT form) that tracks the

listing requirements and evaluates the claimant under Part A and B criteria. *See* 20 C.F.R.§

404.1520a(b)(2, 3), (d). At the administrative hearing level, the ALJ may complete the PRT form

with or without the assistance of a medical advisor. 20 C. F. R. § 404.1520a(d)(1). However, the

standard form must be appended to the decision and the ALJ must discuss in his opinion the evidence

he considered in reaching the conclusions recorded. 20 C. F. R. §404.1520a(d)(2); *see also Cruse*,

49 F.3d at 617. In addition to discussing the evidence supporting his decision, the ALJ must also

discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citing *Zblewski*

*v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)) ("a minimal level of articulation of the ALJ's

assessment of the evidence is required in cases in which considerable evidence is presented to counter

the agency's position.").

      24.     To meet the listing requirements under the Part A criteria regarding the severity of

the impairment, the condition or impairment must result in at least one of the following:

> 1. Depressive syndrome characterized by at least four of the following:
>    - Anhedonia or pervasive loss of interest in almost all activities; or
>    - Appetite disturbance with change in weight gain; or
>    - Sleep disturbance; or
>    - Psychomotor agitation or retardation; or
>    - Decreased energy; or
>    - Feelings of guilt or worthlessness; or
>    - Difficulty concentrating or thinking; or
>    - Thoughts of suicide; or
>    - Hallucinations, delusions, or paranoid thinking.

2. Manic syndrome; or
3. Bipolar syndrome;

20 C.F.R. § 404.1520a(b)(3); id. Pt. 404, Subpt. P, App. 1, § 12.04 A.[4]

25.     In the ALJ's PRT form, he reviewed the Plaintiff's mental impairment pursuant to §12.04 of the listings. For the Part A criteria, the ALJ found that symptoms were "absent" for all three depressive, manic, and bipolar syndromes. *See* R. at 23-24. For the Part B criteria, he did not complete the analysis since the regulations require a claimant to meet both sets of criteria in order to meet the listing. *Id*. In the ALJ's opinion, he stated that he "independently reviewed the impairments of record under Sections 1.05C, 12.04, 1.13 and 9.09 and am persuaded that they fall short of listings-level severity." *See* R. at 20. He also stated that the Plaintiff's "depression interferes somewhat with her ability to deal with work stresses and her concentration is slightly impaired by the combination of her depression and her medications. However, she does not have marked impairments in any area (See attached PRT form)."*See* R. at 20. There is no reference, within the ALJ's opinion, to the record to support this finding.

26.     I see a least two problems with the ALJ's analysis. Certainly, the record must contain substantial competent evidence to support the conclusions recorded on the PRT form. *See Washington*, 37 F.3d at 1442. Moreover, if the ALJ prepares the form himself, he <u>must</u> "discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form." *Id.* (quotation omitted). In this case, the ALJ failed to do that. In his written opinion, the ALJ stated that he "independently reviewed the impairments of record under . . . 12.04 . . . and am persuaded that they fall short of listings-level severity." *See* R. at 20. He did not relate any evidence to his

---

[4]     The issue in this case revolves around the "depressive syndrome" requirement, therefore, I listed only the characteristics of that syndrome and omitted the characteristics for "manic" and "bipolar" syndromes.

conclusion.

27.     More importantly, I have doubts whether there is substantial evidence to support his

conclusion. In this case, there is evidence in the record that could possibly support a finding of

"depressive syndrome." Specifically, there is documented evidence of Ms. Penley's appetite problem

and weight gain, sleep disturbance, decreased energy, concentration problems, and suicide attempts

*See* R. at 52, 255-56, 377, and 396.[5] In November of 1994, Dr. Owen stated in a letter to the New

Mexico Department of Labor that Ms. Penley was initially diagnosed with major depression and that

factors attributing to her condition were her eating disorder and obesity. *See* R. at 396. He also

focused on her attempts of suicide. *Id.* I find that there could be enough evidence within the

record to meet the requirements set forth in Part A of the criteria. Even if the evidence pointed

out does not support a finding of a depressive syndrome, the ALJ should have addressed this

uncontroverted evidence in his opinion. *See Clifton*, 79 F.3d at 1009-10. Therefore, I recommend

finding the ALJ failed to support his conclusions under the Listings with substantial evidence and

should be remanded for the Commissioner to complete the sequential evaluation analysis with the

appropriate consideration accorded to the Plaintiff's mental impairment, to complete the PRT form

in order to reflect the evidence of record, and to discuss the evidence considered in reaching the

conclusions expressed on the PRT form.

Residual Functional Capacity

28.     Although I recommend this case should be remanded for the ALJ to reevaluate the

claimant's mental impairment according the regulations and the listings, I will continue to analyze

---

[5]     The ALJ even conceded within his decision that Ms. Penley displays symptoms of decreased energy. *See* R. at 20.

whether the ALJ's residual functional capacity assessment (RFC) was supported by substantial evidence. The ALJ first found that the "claimant has had a residual functional for at least light work for all continuous 12 month periods at issue, limited by an inability to lift more than five pounds with her right hand." *See* R. at 21.  He also found that the Plaintiff had retained the "functional capacity to perform the mental and physical requirement [sic] of her past work as a customer service representative." *Id*. He based his finding on an evaluation made by the Plaintiff's hand doctor who stated that "from the standpoint of her hand, I think Ms. Penley will be able to perform the occupation which she had previously." *See* R. at 435. The ALJ further stated that the Plaintiff's "other restrictions do not interfere with her ability to perform this work." *See* R. at 21. The ALJ did not explore the requirements of Plaintiff's past work at the hearing nor was the issue developed on the record. This was error.

   29. The ALJ has a duty to develop the record regarding the requirements of Plaintiff's past work at step four. *See Henrie v. Department of Health and Human Services*, 13 F. 3d 359, 360-61 (10th Cir. 1993). Step four is comprised of three phases. *See Winfrey v. Chater*, 92 F. 3d 1017, 1023 (10th Cir. 1996). In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity. *See id*. (citing *Henrie*, 13 F. 3d at 361). In the second phase, the ALJ must determine the physical and mental demands of the claimant's past relevant work. *See id*. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. *See id.*

   30. At the second phase of the step four analysis, the ALJ is required to make findings regarding the physical and mental demands of the claimant's past relevant work. To make these findings, the ALJ must obtain adequate "factual information about those work demands which have

a bearing on the medically established limitations." *Winfrey v. Chater*, 92 F. 3d 1017, 1023. In this case, the ALJ failed to develop the record and failed to make findings regarding the physical and mental requirements of Plaintiff's past relevant work of a sales representative. This analysis is particularly imperative in this case due to the Plaintiff's inability to use complete function of her dominant hand.[6] Under these circumstances, a remand is required under *Henrie* and *Winfrey*. On remand, the ALJ should inquire into the findings specifying the mental and physical demands of Plaintiff's past relevant work.

## RECOMMENDED DISPOSITION

I recommend finding the ALJ did not apply the correct legal standards and his decision is not supported by substantial evidence. The Plaintiff's Motion to Reverse and Remand Administrative Decision, filed September 21, 1999, should be GRANTED. This case should be remanded to the Commissioner for completion of the sequential evaluation analysis with appropriate consideration accorded to the Plaintiff's mental impairment, completion of the PRT form to reflect the evidence of record, and discussion in the opinion of the evidence the ALJ considered in reaching the conclusions expressed on the PRT form. The ALJ should inquire into the findings specifying the mental and physical demands of Plaintiff's past relevant work. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed

---

[6]      The Plaintiff testified that her first and second fingers of her dominant right hand were amputated. *See* R. at 48-49.

findings and recommendations.  If no objections are filed, no appellate review will be allowed.


**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**